**WESTERN UNION TELEGRAPH CO. v. CARTER et al.**

No. 14197—Opinion Filed July 10, 1923.

Rehearing Denied Nov. 27, 1923.

**1. Dedication — Public Use — Election of Owner.**

Whether or not private property shall be charged with a public use, and its consequent burdens, is ordinarily a matter of election on the part of the owner.

**2. Same — Private Property Forming Part of Common Carrier System—Regulation.**

If an owner of private property voluntarily associates his property with that of another for a certain period of time in the creation of a common carrier system, and thereby leads the public to believe that a transportation system is tendered to the public for such services as is ordinarily and usually furnished by a common carrier, the property will become impressed with the public use, and such regulation as is usually applied by the state to common carriers.

**3. Same.**

When the owner of private property voluntarily dedicates it to public use in a common carrier system for a certain period of time, he cannot object that the ordinary and usual regulations applied by the state to a common carrier may affect his property so associated with other property to complete the transportation system.

### 4. Same—Equitable Relief.

When private property is so dedicated to the public use with other property to make up a common carrier system for a definite period of time, it will be subject to the regulatory laws ordinarily applied by the state to a common carrier during such period of time, unless the owner may go into a court of competent jurisdiction and upon legal or equitable grounds, show a right to withdraw the property from public service before the expiration of the period of time provided.

### 5. Corporation Commission— Regulation of Private Property Used in Railway System.

The Corporation Commission in considering the threatened breach of a public right by some intended disposition of property being used in a common carrier system is not concerned with the motive or thing that induced the owner to apply his property to a public use. Any private differences will be left for settlement between the parties associated in the operation of the transportation system to a court of competent jurisdiction.

### 6. Same—Review of Commission's Orders.

It is with the use of private property after it has been dedicated to a public service that the Corporation Commission is concerned, and it has jurisdiction to regulate such use, and this court is confined within the same scope in reviewing the action of the commission on such questions.

(Syllabus by Stephenson, C.)

Commissioners' Opinion, Division No. 4.

Action by Western Union Telegraph Company a corporation, against F. C. Carter, Joe B. Cobb, and E. R. Hughes, composing the Corporation Commission of the State of Oklahoma, and Kansas, Oklahoma and Gulf Railway Company, for a writ of prohibition to restrain the defendants from putting into effect an order heretofore entered by the Corporation Commission. Writ denied.

Keaton, Wells & Johnston and Francis R. Stark, for plaintiff.

John E. M. Taylor, for railway company.

E. S. Ratliff, for Corporation Commission.

Opinion by STEPHENSON, C. A controversy arose heretofore between the petitioner and respondent over the question of continuing the use of telegraph facilities by the plaintiff on the property of the railway company. The question of the removal of the wire service was submitted to the Corporation Commission in an action wherein the order of the parties was in the reverse of the present action. The order of the commission was that the respondent (a) shall refrain from discontinuing to furnish and shall furnish commercial telegraph service to all or any of the stations of the railway in Oklahoma now being furnished such service; (b) shall refrain from discontinuing and shall continue to furnish telegraph service to the respondent in connection with the operation of its railway in Oklahoma. The respondent did not appeal from the order but assumed that the Corporation Commission was without jurisdiction in the matter, and acted in excess of its powers, and has commenced its action in this court for a writ of prohibition against the railway and the commission. The relief sought by the writ is to avoid the effect of the order in requiring the petitioner to continue the telegraph service as provided by the order. The scope of plaintiff's petition in this action presents both private rights between the parties, and the rights of the public served by the carrier for consideration in disposing of the controversy between the parties. The Corporation Commission was concerned only with the rights of the public in the trial of the cause in the first instance, and not with the private rights or obligations between the parties, nor are the private rights or obligations between the parties matters for consideration in this action. What might have been the motive or inducement for the petitioner to place certain of its property or means with that of the railway in completing the agency for the railway to perform its duties to the public as a common carrier, was not a question of concern for the commission; nor is it one for consideration in this cause. It was enough to know that the petitioner had voluntarily given or permitted the use and possession of its property along with that of the railway to enable the latter to complete the common carrier system for the use of the public. Whether the property shall remain impressed with the charges of private ownership or those of a public nature is ordinarily a matter for the owner to decide. If the owner voluntarily places his property along with the property of other owners to create a common carrier system, he cannot complain that his property become subject to the regulatory powers usually and ordinarily applied by the state to the common carriers. Munn v. Ill., 94 U. S. 113, 24 L. Ed. 77, 78; State ex rel. Helm v. Trego County Co op. Telegraph Co. et al. (Kan.) 212 Pac. 902.

The Corporation Commission in the former action, and this court in the present action, was and is concerned merely with

the conduct and operation of the transportation line that the petitioner assisted to create to serve the public along its passageway. The record discloses that the petitioner agreed to the use of its property for telegraph service for the railway in the operation of its trains for a period of 20 years, from July 5, 1909. If a condition has arisen which in law or equity will entitle the petitioner to withdraw its property from the public use to which it voluntarily dedicated it, courts of general jurisdiction have power to afford ample relief to the interested parties. The Kansas, Oklahoma & Gulf Ry. Company, formerly the Missouri, O. & G. Railway Company, had completed its transportation system. Engines and cars were present with a complete telegraph system for the direction and operation of its trains and to advise the public of the time of arrival and departure. A wire or an aerial system of communication is as necessary in the proper operation of trains as motive power. The public saw a common carrier system fully equipped to perform service usually and ordinarily done by a railway system. The public was not under the legal duty to inquire whether or not it was the separate or joint action or property of one or more persons. It was enough that a complete system for efficient transportation was present. This was an implied invitation to the public to build towns and industries along its line of railway. When the public acted on the invitation and expended great sums of money and incurred great costs in town building and construction of commercial institutions along the line of railway, an obligation arose by implication of law in favor of those so induced to act, and against those who held out the inducement to afford adequate service for the present and growing needs of the public. It is at this stage that the jurisdiction of the Corporation Commission attaches to enforce and protect the reciprocal duties and rights of the common carrier and public. Section 18, art. 9, of the Constitution; C., R. I. & P. Ry. Co. v. Filson, 35 Okla. 89, 128 Pac. 298; C., R. I. & P. Ry. Co. v. State, 23 Okla. 94, 99 Pac. 901.

It was in fact this relation that the Corporation Commission, cause corporations or its order of December 19, 1922. It is true that the threatened breach of the public's rights in the matter was not brought to the attention of the commission by a member of the group entitled directly to the services, but the commission had before it by the proceedings one of the members who had by the inducement created the rights between the carrier and the public, and

who was threatening to impair the ability of the carrier to perform its duty towards the public. The law does not require formal pleading before the commission. The respondent did not question the act of the railway for the public in bringing to the attention of the commission its threatened action. The pleading filed with the commission was sufficient to show the previous dedication of the telegraph system to the public use along with other classes of properties contributed by the carrier corporation to complete an efficient transportation system, which the respondent was then threatening to impair beyond the point of usefulness. The pleadings, together with the presence of the respondent, gave the Corporation Commission jurisdiction to deal with the threatened action of the respondent, and the order following the hearing thereon by the commission was within the scope of the issues presented by the pleadings. It was entirely optional with the telegraph company as to whether or not it caused its property to become impressed with a public use, and its consequential burdens. Whether or not it did so was of no concern to the state, but having associated certain of its property with that of others, for a definite period of time, in holding out to the public a complete transportation system, and thereby inducing the public to act on the belief that adequate transportation facilities would be furnished by them, becomes the concern of the state to the extent that it will require that an adequate transportation system be maintained to meet the public's needs. The state has the power, and will, through its Corporation Commission, cause corporations or persons who shall so incur obligations towards the public to fairly and faithfully discharge the same in the operation of the transportation line during the period of time it so agreed to use the property, unless the interested party or parties may go into a court of competent jurisdiction and show a legal or equitable right to withdraw the property from the public use. Public policy would forbid the application of a different rule, as the well-being and safety of the people of the state depend upon the continued operation of the railway. If plaintiff should accomplish what it has threatened to do, it would result in an immeasurable impairment of the service of the carrier line and consequences that would materially affect the rights of the public. The plaintiff, having dedicated its property to a public service for a certain period of time, will be held to the performance of the obligation voluntarily assumed, unless it be permitted by a court of com-

petent jurisdiction, upon sufficient legal or equitable grounds, to withdraw the property from such service, prior to the agreed time. The record is not sufficiently clear to determine if there is error in the requirement of the plaintiff to furnish commercial service to the stations of the respondent in Oklahoma. The record does not show the nature of the commercial service required to be given to the public. If it is in whole or part for the use of shippers and consignees, whether paid for by the railway or public, for making inquiry of other stations on the respondent's line of railway as to shipment or movement of freight, the rule already stated will apply in this instance.

It is therefore recommended that the writ be denied.

By the Court: It is so ordered.