18687. GEORGIA POWER COMPANY *v.* GEORGIA
PUBLIC SERVICE COMMISSION *et al.*

ARGUED SEPTEMBER 16, 1954—DECIDED NOVEMBER 8, 1954—REHEARING
DENIED DECEMBER 2, 1954.

226

*Troutman, Sams, Schroder & Lockerman,* for plaintiff in error.

*Arnall, Golden & Gregory, C. E. Gregory, Jr., Robert D. Tisinger,* for party at interest not party to record.

*Eugene Cook, Attorney-General, Dudley Cook,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ▮ The first question presented for our determination is, whether the Commission has jurisdiction and legal authority to force Georgia Power Company, against its will, to buy or merge with a separate and distinct neighboring electric public utility, or to sell power to such other utility company, although the Power Company has never undertaken as a public utility to provide such service. The Georgia Public Service Commission has only such powers as the legislature has expressly, or by fair implication, conferred upon it. *Zuber* v. *Southern Railway Co.,* 9 *Ga. App.* 539 (2) (71 S. E. 937); *Georgia Public Service Commission* v. *City of Albany,* 180 *Ga.* 355 (179 S. E. 369). And its powers

with respect to gas companies, which are equally applicable to electric public utilities, are fairly and concisely stated in *Georgia Public Service Commission* v. *Atlanta Gas Light Co.,* 205 *Ga.* 863, 880 (55 S. E. 2d 618). It is distinctly and positively averred in the petition, which must be taken as true on demurrer, that the Power Company has never, at any time, assumed any responsibility or committed itself as a public utility to furnish electric power to Georgia Power and Light Company, or to any other neighboring public utility, and that no schedules of rates have been established by the Commission under which such neighboring utilities located outside of the area or territory which it has undertaken to serve as an electric public utility may purchase power from it; that, although it has from time to time, when it had or expected to have available power, made contracts with the Light Company for a limited time to meet its emergency power needs in limited amounts, such sales have always been under terms and conditions mutually agreed upon between the parties, and under such terms and conditions as did not prejudice the Power Company in the fulfilment of its responsibilities to its own customers; and that such contracts have never been the subject matter of regulation or control by the Commission, although the Commission had been duly advised of the execution thereof.

We find no Georgia statute which confers upon the Georgia Public Service Commission authority to require one public utility to buy or merge with another, or to sell or not to sell power to each other. The general rule, as stated in 43 Am. Jur. 588, § 22, is as follows: "To require a public utility to devote its property to a service which it has never professed to render or to the service of a territory which it has never undertaken to serve is tantamount to taking that property for public use without just compensation." In *Georgia Public Service Commission* v. *Georgia Power Co.,* 182 *Ga.* 706 (186 S. E. 839), this court quoted with approval the following from Interstate Commerce Commission *v.* Oregon-Washington R. &c. Co., 288 U. S. 14, 41 (53 Sup. Ct. 266, 77 L. ed. 588): "State courts have uniformly held that to require extension of existing lines beyond the scope of the carrier's commitment to the public service is a taking of property in violation of the Federal Constitution," and

at page 714 this court goes on to say: "It is one thing to require an extension of the existing line within the scope of the commitment to the public service, and quite another and different thing to require the extension of existing lines beyond such scope, and beyond the territory preempted, and beyond the region it has professed to serve." To the same effect, see Hollywood Chamber of Commerce v. Railroad Commission, 192 Cal. 307 (219 Pac. 983, 30 A. L. R. 68, PUR 1924-B 503); Oklahoma Nat. Gas Co. v. Corporation Commission, 88 Okla. 51 (211 Pac. 401, 31 A. L. R. 330, PUR 1923-B 836); Oklahoma Nat. Gas Co. v. Scott, 115 Oklahoma 8 (241 Pac. 164, PUR 1926-B 67); Atchison T. & S. F. Ry. Co. v. Railroad Commission, 173 Cal. 577 (160 Pac. 828, 2 A. L. R. 975, PUR 1917-B 336).

It also seems to be a well-settled rule that public utilities have the right to enter into contracts between themselves, or with others, free from control or supervision of the State, so long as such contracts are not unconscionable or oppressive and do not impair the obligation of the utility to discharge its public duties. In Halifax Paper Co. v. Roanoke Rapids Sanitary District, 232 N. C. 421, 429 (61 S. E. 2d 378), the Supreme Court of North Carolina said: "It is stated in 51 C. J., p. 8, Sec. (19) F, 'The fact that a business or enterprise is, generally speaking, a public utility, does not make every service performed or rendered by it a public service, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person.' Phoenix v. Kasun, 54 Ariz. 470, 97 P. 2d 210, 127 A. L. R. 84; Western Union Telegraph Co. v. Louisville & N. R. Co., 250 F. 199. And in 51 C. J., p. 6, Sec. (13) B, it is also said: 'Public utilities have the right to enter into contracts between themselves or with others, free from the control or supervision of the State, so long as such contracts are not unconscionable or oppressive and do not impair the obligation of the utility to discharge its public duties.' Oklahoma Gas & Elec. Co. v. Wilson & Co., 146 Okla. 272, 288 Pac. 316; Oklahoma Gas & Electric Co. v. Oklahoma Natural Gas Co., 85 Okla. 25, 205 Pac. 768."

For the Commission to order the Power Company to sell the Light Company its power requirements, even if it should appear that it had the available capacity, would be for the Commission

to usurp the functions and prerogatives of the Power Company, and this it cannot do, for, as was held by this court in *Southern Bell Telephone &c. Co. v. Georgia Public Service Commission,* 203 *Ga.* 832, 878 (49 S. E. 2d 38): "The Commissioners are not the managers of this company, but their function is to regulate and disapprove any dishonest or clearly inefficient conduct and practice by the utility. Public regulation must not supplant private management. *Georgia Public Service Comm. v. A. & W. P. R. Co.,* 164 *Ga.*`822 [139 S. E. 725]; Missouri ex rel. Southwestern Bell Telephone Co. *v.* Public Service Commission [262 U. S. 276, 43 Sup. Ct. 544, 67 L. ed. 247, 42 A. L. R. 1232]; Chicago M. & St. P. Ry. Co. *v.* Wisconsin, 238 U. S. 491 (35 Sup. Ct. 869, 59 L. ed. 1423, L. R. A. (1916A) 1133); Banton *v.* Belt Line Ry., 268 U. S. 413 (45 Sup. Ct. 534, 69 L. ed. 1020)." Neither does the Commission have authority to order a merger of two public utilities, or the purchase of one by the other. In Re Oldtown Telephone System, 87 PUR (NS-1951) 82 (2), it is said: "The Commission is sympathetic with those who by reason of location and community of interest with Winston-Salem have found the toll charges of the company expensive, inconvenient, and unsatisfactory, and it is not unmindful of suggestions that Southern Bell purchase the telephone properties of the Oldtown Telephone System, all of which has been given consideration, but the Commission has only such powers as have been delegated to it by statute. It has not been given the power to require one company to sell and another to purchase. In its attempt to do equity and justice in this case, it must consider the interests of all parties involved and make its decision within the powers delegated to it by statute."· See also Trustees of Freeport *v.* Nassau & Suffolk Lighting Co., PUR 1924-A 96 (6); City of Groton *v.* Groton-Ferney Mutual Telephone Co., PUR 1919-E 894 (2); Re Androscoggin Electric Co., PUR 1921-A 201 (3); City of Mountain View *v.* Farmers Telephone Exchange Co., PUR 1919-D 208 (3); Re Arizona Corporation Commission, PUR 1919-E 566. We, therefore, conclude that the Commission has no jurisdiction of the subject matter of the rule nisi which it had issued, and that the proposed hearing would be a nullity.

■ The other question for decision is, whether injunction is a remedy available to the plaintiff, and that question is conclu-

sively settled by the decisions of this court. In *McIntyre* v. *Harrison*, 172 *Ga.* 65 (157 S. E. 499), it is held: "Injunction is an available remedy to restrain the Georgia Public Service Commission from undertaking to regulate a business over which the power of regulation has not been conferred upon that body." In *Irwin* v. *Crawford*, 210 *Ga.* 222, 224 (78 S. E. 2d 609), it is said: "There is no doubt but that equity will exercise jurisdiction to restrain acts or threatened acts of public corporations or of public officers, boards, or commissions which are ultra vires and beyond the scope of their authority, outside their jurisdiction, unlawful or without authority." To the same effect, see *Georgia Public Service Commission* v. *Saye & Davis Transfer Co.*, 170 *Ga.* 873 (154 S. E. 439); *Georgia Public Service Commission* v. *Taylor*, 172 *Ga.* 100 (157 S. E. 515); *Georgia Public Service Commission* v. *City of Albany*, 180 *Ga.* 355 (179 S. E. 369); *Smith* v. *McMichael*, 203 *Ga.* 74 (45 S. E. 2d 431); *Southern Bell Telephone &c. Co.* v. *Georgia Public Service Commission*, 203 *Ga.* 832 (49 S. E. 2d 38); *Georgia Public Service Commission* v. *Atlanta Gas Light Co.*, 205 *Ga.* 863 (55 S. E. 2d 618); *Moore* v. *Robinson*, 206 *Ga.* 27, 28 (55 S. E. 2d 711). The contention that the plaintiff should have first raised the question of jurisdiction before the Commission is without merit. The Commission has asserted its jurisdiction by the issuance of the rule nisi.

Under the foregoing rulings, the petition stated a cause of action, and the trial court erred in sustaining the general demurrer thereto.

*Judgment reversed. All the Justices concur.*