26710.   ATLANTA GAS LIGHT COMPANY v.
GEORGIA PUBLIC SERVICE COMMISSION et al.

348

Argued September 16, 1971—Decided November 5, 1971—
Rehearing denied November 18, 1971.

*Hansell, Post, Brandon & Dorsey, Albert G. Norman, Jr.,
Carroll L. Wagner, Jr.,* for appellant.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr.,
Executive Assistant Attorney General, Robert J. Castellani,
John W. Hinchey, Assistant Attorneys General, Troutman,
Sams, Schroder & Lockerman, Milton A. Carlton, Jr.,* for
appellees.

Mobley, Presiding Justice. This appeal by Atlanta Gas
Light Company is from a final order denying it injunctive
and other relief against the Georgia Public Service Com-
mission.

The case originated by petition of the Georgia Power
Company filed with the commission, complaining of the on-
site generation and sale of electric energy by Atlanta Gas
without regulation by the commission. After a hearing on
the petition, the commisssion made the following findings
and orders:

"(1) The commission has not previously taken jurisdiction
over the furnishing of utility services by a landlord to his
tenants. However, the sale of energy *by a public utility to a
landlord* is clearly under the jurisdiction of the commission,
and the rates for such sales are now regulated by the com-
mission. The sale of 'total energy,' including electricity, hot
and chilled water, to Crow and Portman at 225-235 Peach-
tree Street, Atlanta, Georgia, by Atlanta Gas is very simi-
lar in effect to the sale of electricity or gas by a public
utility to a landlord and should be similarly regulated in
order to protect the public interest, either by regulation of
rates for the electricity supplied or by regulation of rates
for the 'total energy' package.

"(2) Although Atlanta Gas claims that it is not holding
itself out as offering electric service only to the public, the

testimony at the hearing showed that Atlanta Gas has participated in negotiations concerning other similar 'total energy' projects in the State, and the commission believes that Atlanta Gas would undertake to provide such service generally if it were economically profitable to do so.

"(3) The number of people in the City of Atlanta who are now and will be affected by the existing and planned on-site total energy service at the Peachtree Center Complex is very large, exceeding 16,000 persons, who will be without recourse to the commission if jurisdiction and regulation were avoided in this and similar cases.

"(4) The substantial subsidy required of Atlanta Gas to construct and operate the existing and planned on-site total energy plants at the Peachtree Center Complex will be reflected in its balance sheet and could possibly have an effect on its cost of money and thereby affect its rates for other customers in the State of Georgia.

"(5) The commission makes no finding as to the existence or lack of charter authority of Atlanta Gas to sell electricity. This is a matter for the jurisdiction of the proper superior court in the State of Georgia.

"Wherefore, it is

"*Ordered:* that the Georgia Public Service Commission has jurisdiction over the existing and planned on-site total energy plant, constructed and operated by Atlanta Gas Light Company at 225-235 Peachtree Street (Peachtree Center), Atlanta, Georgia.

"*Ordered further:* that rates, rules and regulations for 'on-site' or total energy systems now in operation or proposed by Atlanta Gas Light Company be filed within sixty (60) days from date of this order for approval or disapproval by the commission.

"*Ordered further:* that jurisdiction over this matter is expressly retained for the purpose of entering such further order or orders as to this commission may seem meet and proper."

Thereafter Atlanta Gas filed a complaint in Fulton Superior Court against the Georgia Public Service Commission

and the members thereof, and the Georgia Power Company, seeking declaratory and injunctive relief, contending that the order of the commission is unreasonable, arbitrary, capricious, and without evidence to support it; in violation of the laws of Georgia; in violation of the rules and regulations of the commission; an abuse of discretion; and invalid. The complaint stated the contentions of Atlanta Gas as to why each provision of the order is erroneous, and attacked the order as being in violation of stated provisions of the State and Federal Constitutions.

By agreement of the parties the case was heard by Judge Claude Shaw without the intervention of a jury, and the evidence before the commission was considered as evidence in the case. In the final judgment Judge Shaw held that the order of the commission was fully supported by the evidence elicited before the commission and the trial court; and that the order was not subject to any of the attacks made. The declaratory and injunctive relief prayed by Atlanta Gas was denied.

Atlanta Gas appealed from this judgment. The enumeration of errors specifies nineteen contentions as to why the judgment of the trial court is erroneous.

■ The Constitution of Georgia, Art. IV, Sec. IV, Par. III (*Code Ann.* § 2-2703) provides that there shall be a Public Service Commission "for the regulation of utilities," vested with the jurisdiction, powers and duties provided by law. By statute the Commission is given "general supervision" of all "gas or electric light and power companies within this State"; *Code* § 93-307, as amended by Ga. L. 1967, p. 650.

Atlanta Gas concedes that it is a public utility company subject to regulation by the commission, but contends that the contract to supply a total energy service, including electricity, to its landlord, Crow & Portman, is a private, non-utility contract, since Atlanta Gas is not holding itself out to the public generally to provide electrical service, or a total energy service, including electricity.

Atlanta Gas relies strongly on the case of *Ga. Power Co. v. Ga. Public Service Commission*, 211 Ga. 223 (85 SE2d

14), in support of its position. The ruling made in that case was that the commission had no jurisdiction to require Georgia Power Company to furnish to Georgia Power & Light Company all its power requirements, or to require the two electrical companies to merge.

The language in *Ga. Power Co. v. Ga. Public Service Commission,* 211 Ga. 223, supra, relied on by Atlanta Gas was quoted from Corpus Juris, and is as follows: "The fact that a business or enterprise is, generally speaking, a public utility, does not make every service performed or rendered by it a public service, but it may act in a private capacity as distinguished from its public capacity, and in so doing is subject to the same rules as a private person . . . Public utilities have the right to enter into contracts between themselves or with others, free from the control or supervision of the State, so long as such contracts are not unconscionable or oppressive and do not impair the obligation of the utility to discharge its public duties."

Atlanta Gas is presently supplying a total energy service, including electricity, to its landlord, Crow & Portman, for two 25-story buildings. Atlanta Gas is one of a number of tenants in one of these buildings. It proposes to extend its total energy service to a 70-story building to be erected in the same block. Atlanta Gas asserts that furnishing the present and proposed service does not, and will not, require the use of the public streets. This assertion overlooks the fact that the natural gas providing the fuel to produce the service is transmitted through the pipe lines of Atlanta Gas using public streets and rights of way as a public utility company.

The commission was authorized to find from the evidence that the two 25-story buildings now being served, and the 70-story building to be erected, would be occupied by more than 16,000 people as tenants, residents, and employees, all using the electrical service supplied by Atlanta Gas. This would be a significant segment of the public. Atlanta Gas is not an owner, or co-owner of the buildings in which the electricity is generated and utilized, and it would not be

producing electricity for its own use only.

The commission was authorized to find from the evidence that Atlanta Gas had entered into negotiations with reference to one large project in Atlanta, and another in Macon, to consider the feasibility of installing a total energy system in these projects, although it had not found it economically practical to provide this service to these projects, since a large investment of capital is required for each unit.

The commission was therefore authorized to find that, as to a limited type of customer, using large quantities of energy, Atlanta Gas is furnishing, and proposing to furnish, a total energy system, which includes electricity, a regulated utility, to the public. The commission thus correctly found that the contract between Atlanta Gas and Crow & Portman is not a private, non-utility contract.

■ Atlanta Gas assigns error on the finding by the commission that the sale of the total energy service "is very similar in effect to the sale of electricity or gas by a public utility to a landlord and should be similarly regulated in order to protect the public interest, either by regulation of rates for the electricity supplied or by regulation of rates for the 'total energy' package."

Technological advances have made it possible for Atlanta Gas to convert natural gas into a total energy service, so that instead of selling gas to Crow & Portman, it is selling total energy, including electricity. Unquestionably, Atlanta Gas would be regulated as to its rates if it sold the gas to Crow & Portman that it is using to generate electrical power. It cannot avoid regulation of its rates by converting its natural gas into a total energy service, which includes electricity, a utility also subject to regulation. This is the effect of the holding of the commission in the first division of its order, and this finding is not erroneous.

The form of rate regulation has not yet been determined. If the commission cannot regulate the charge for electricity alone because the charge for electricity is inseparably interwoven with the charge for hot and cold water, the commission may consider the rate for the total energy service.

■ In the fourth division of the commission's ruling it was found that a substantial subsidy was required of Atlanta Gas to construct and operate the total energy plant at Peachtree Center, and that this could possibly have an effect on its cost of money and thereby affect its rates for other customers in the State. This finding is assigned as error.

The evidence authorized the commission to find that Atlanta Gas has made very substantial investments in its total energy system. The commission is given general supervisory power over gas companies. *Code Ann.* § 93-307. The commission is authorized to investigate the possibility of the contract impairing the obligation of Atlanta Gas to discharge its public duties. *Ga. Power Co. v. Ga. Public Service Commission,* 211 Ga. 223, 228, supra.

■ The constitutional attacks made on the order of the commission are all predicated on the theory that the commission is attempting to regulate a private contract of Atlanta Gas which is not affected with a public interest. Since we have determined that the present and proposed undertaking of Atlanta Gas to supply electrical energy in a total energy service is a matter affected with a public interest, the constitutional attacks are without merit.

■ The trial judge did not err in finding that the order of the commission was supported by the evidence and not subject to the attacks made by Atlanta Gas, and that declaratory and injunctive relief should be denied to Atlanta Gas.

*Judgment affirmed. All the Justices concur, except Felton, J., disqualified.*